OPINION OF THE COURT
Guy Gilbert Ribaudo, J.
Plaintiff Leola Thompson brings an action for negligence in the handling and embalming of her son’s remains by defendant Duncan Bros. Funeral Homes, Inc. Plaintiff called as witnesses Mrs. Thompson herself and Mr. Williams, the Georgia funeral director who received the body which had been shipped from New York after the embalming. Defendant called as its witness Mr. Duncan, the director of the defendant corporation. The court has made a diligent search of the law in this jurisdiction and notes that no case in point has been reported. Accordingly, this is a case of first impression.
The following facts are undisputed. Plaintiff’s son died of a bullet wound at Morrisania Hospital on July 16, 1975. His remains were embalmed on or about July 18, 1975 by defendant at defendant’s place of business in New York City. After being displayed there for one day, the remains *228 were transported by American Airlines to Williams & Williams Funeral Home in Savannah, Georgia, for the express purpose of having the remains viewed by the grandmother of the deceased. On the evening of its arrival in Georgia, July 20, 1975, the casket was opened before plaintiff and family members for further display and the remains were discovered to be decomposed, swollen, odiferous and leaking dark colored fluid.
Plaintiff alleges that by reason of the negligent supervision, operation, management and control of the embalming of her son’s body, which caused it to be in the condition described above on the evening of the day of its arrival in Georgia, plaintiff sustained the following personal injuries: psychic trauma, traumatic neurosis manifested by reactive depression and anxiety, acute reactive anxiety and depression, aggravated hypertension with increased blood pressure, headaches, dizziness, palpitations and nocturia, insomnia and nightmares, uncontrollable crying, weight gain, leg pains, impaired memory, disorientation and impairment of personality and appearance. These injuries are alleged to be permanent. Plaintiff further alleges that she was confined to bed for approximately two months and is partially and intermittently to date. Plaintiff also alleges that she was incapacitated from her employment for approximately two months and remains so partially. Lastly, she alleges the following special damages: physicians’ services at $200; medical supplies at $25 and household help at approximately $1,000. Plaintiff seeks compensatory damages in the sum of $150,000. At the end of the trial, plaintiff withdrew its second cause of action for willful, wanton negligence wherein plaintiff had sought punitive damages in the same amount.
At trial plaintiff testified as to the appearance of her son’s remains on their arrival in Georgia as swollen, leaking and having facial distortions; she contrasted this sight to her memory of him alive as a strong and handsome baseball player in his early 30’s. She contended that her sleep is still interrupted by the nightmares caused by this awesome memory. Mr. Williams, the Georgia funeral director, testified that a tissue gas condition existed in the remains which had set in before the arrival at his funeral *229 home and that this condition was probably caused by a failure to hypodermically treat the deep tissues of the body. He further testified that it is proper embalming practice to so treat deep tissues of a body. In Mr. Williams’ expert opinion, tissue gas condition is caused in 99% of cases by faulty embalming; the other cause would be the use of infected instruments.
Mr. Duncan, director of defendant corporation, testified that the remains had been properly embalmed and that he had viewed them while they were in New York. He further testified that the faulty condition discovered after arrival may be attributed to the fact that a complete autopsy had been performed by the medical examiner, contending that embalming is made more difficult for an embalmer under such conditions.
In order to sustain a cause of action in negligence, the plaintiff must prove that a legal duty was owed to him, that this duty was not performed or was improperly performed, and that injury resulted as a consequence thereof (1A Warren’s NY Negligence, § 3, p 134; also see Holodook v Spencer, 43 AD2d 129, affd 36 NY2d 35). Case law has established that an undertaker owes a duty to refrain from negligent conduct in preparing a dead body for burial (Baumann v White, 234 NYS2d 272). In addition, it has been settled that next of kin have a cause of action for mental anguish and shock suffered as a result of a defendant undertaker’s negligent preparation of a body for burial (Baumann v White, 234 NYS2d 272, 273, supra).
It is the defendant’s position that excessive and negligent handling by American Airlines, and/or the failure of the medical examiner to release the remains to the defendant for two days could have also caused the tissue gas condition rather than a breach of the embalmer’s duty to proceed at his task in a nonnegligent manner. The only testimony presented to the court to buttress defendant’s position, however, was that of an interested witness, Mr. Duncan himself. The court notes that the defendant failed to call American Airlines, the medical examiner or its employee embalmer as a witness. It also failed to name either American Airlines or the medical examiner as a third-party defendant. Defendant nevertheless cites *230 Schwartz v Macrose Lbr. & Trim Co. (29 AD2d 781) to support its position that recovery by plaintiff is not warranted. That case applies the principle that if facts proven show that there are several probable causes of an injury, for one or more of which the defendant is not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, the plaintiff cannot recover since he has, under such circumstances, failed to prove that the negligence of defendant caused the injury. (Ingersoll v Liberty Bank of Buffalo, 278 NY 1, 7; see, also, Filanowicz v Guarino, 27 AD2d 666.) In the case at bar, however, plaintiff’s- witness Mr. Williams in his expert opinion testified that improper embalming was the most probable cause of tissue gas condition, it being the cause in 99% of cases. Accordingly, the court finds that the plaintiff satisfied the burden of proof that defendant’s manner of embalming the remains of plaintiff’s son caused the tissue gas condition by a fair preponderance of the credible evidence. The court further finds that such condition was the proximate cause of plaintiff’s injuries.
The courts have not been primarily concerned with the extent of physical mishandling or injury to a dead body per se, but rather how much improper handling or injury affected feelings and emotions of surviving kin. (Lott v State of New York, 32 Misc 2d 296, 298.) In the case at bar, a mother’s final visual memory of her son is one of decomposed, swollen, distorted and leaking remains. Such a memory will clearly cast an oppressive shadow over the psyche of this mother for the remainder of her life. It is unlikely to diminish with time but rather will continue to affect her profoundly. The court notes its extreme difficulty in establishing a monetary amount to be deemed compensation to the plaintiff under these circumstances but nevertheless recognizes its duty to do so. Accordingly, the court awards plaintiff a judgment in the amount of $35,000. The clerk is directed to enter judgment in said amount against the defendant.