Almeyda v Concourse Rehabilitation & Nursing Ctr., Inc. (2021 NY Slip Op 03521)





Almeyda v Concourse Rehabilitation & Nursing Ctr., Inc.


2021 NY Slip Op 03521


Decided on June 03, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 03, 2021

Before: Webber, J.P., Kern, Oing, González, JJ. 


Index No. 20665/15E Appeal No. 13619 Case No. 2020-01219 

[*1]Chano Almeyda etc., Plaintiff-Respondent,
v
Concourse Rehabilitation & Nursing Center, Inc. Doing Business as Concourse Rehabilitation & Nursing Center, Defendant-Appellant, John Does 1-5, Defendants.


Kaufman Borgeest & Ryan LLP, Valhalla (Shannon Henderson of counsel), for appellant.
Ressler & Ressler, New York (Bruce J. Ressler of counsel) and Villari, Lentz & Lyman, LLC, Philadelphia, PA (Leonard G. Villari of the bar of the Commonweath of Pennsylvania, admitted pro hac vice, of counsel), for respondent.



Order, Supreme Court, Bronx County (Joseph E. Capella, J.), entered January 30, 2020, which, insofar as appealed from, denied defendant's motion for summary judgment dismissing the medical malpractice, Public Health Law, and right of sepulcher claims, affirmed, without costs.
Supreme Court properly denied defendant's motion for summary judgment. Although the affirmations of defendant's experts satisfied its prima facie burden of demonstrating its entitlement to summary judgment as to the medical malpractice and Public Health Law claims, the affirmation of plaintiff's expert, offered in opposition to the motion, was sufficient to raise triable issues of fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324-325 [1986]). 
We reject defendant's contention that plaintiff's expert was not qualified to offer an opinion regarding defendant's management of the geriatric decedent's diabetes. As we have previously explained, "A physician need not be a specialist in a particular field if he nevertheless possesses the requisite knowledge necessary to make a determination on the issues presented. Once the expert professes such knowledge, the issue of the expert's qualifications to render such opinion must be left to trial" (Limmer v Rosenfeld, 92 AD3d 609, 609 [1st Dept 2012] [internal quotation marks, brackets and citation omitted]).
Plaintiff offered the affirmation of a physician, board-certified in physical medicine and rehabilitation, who served for 18 years as chairman of a hospital physical medicine and rehabilitation department, taught in his capacity as an assistant clinical professor of rehabilitative medicine, and remained engaged in the practice of medicine. Plaintiff's expert possessed the requisite knowledge necessary to offer an opinion as to whether defendant deviated from the standard of care appropriate for a rehabilitation center treating a geriatric diabetic patient who was transferred from a hospital to its care, and whether that deviation was a proximate cause of the decedent's death (Limmer, 92 AD3d at 609).
Supreme Court also properly denied the motion for summary judgment dismissing the right of sepulcher claim. The principle is well established that the common-law right of sepulcher gives the next of kin the absolute right to the immediate possession of a decedent's body for preservation and burial, and that damages will be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body (see Shipley v City of New York, 25 NY3d 645, 653 [2015]; Melfi v Mount Sinai Hosp., 64 AD3d 26, 31 [1st Dept 2009]). The right of sepulcher thus protects the legal right of the next of kin to "find solace and comfort in the ritual of burial" (Shipley, 25 NY3d at 653 [internal quotation marks omitted], citing Melfi, 64 AD3d at 32).
The record demonstrates that there are factual issues as to whether defendant improperly dealt with the decedent's body. In his deposition testimony, plaintiff described [*2]viewing the body of the decedent, his father, in a closet-like room where supplies were kept. Plaintiff testified that his father's hands and feet were bound, his stomach had become bloated, he was dirty and unshaven, and a tube was placed down his throat. The decedent's longtime companion further testified that the area where the body was kept "seemed like [a] garbage dump." This alleged mishandling and presentation of the body is, contrary to our dissenting colleague's view, sufficient to raise a factual issue requiring resolution at trial (see Massaro v O'Shea Funeral Home, 292 AD2d 349, 351 [2d Dept 2002]).
We do not interpret the Court of Appeals' decision in Shipley, or our prior decision in Melfi, to limit recovery under the common-law right of sepulcher only to instances where the next of kin is denied immediate possession of the decedent's body. Both Shipley and Melfi clearly state that damages may be awarded where the defendant "improperly deals with" the decedent's body, and we view these cases as supporting that theory of relief (see Shipley, 25 NY3d at 653; Melfi, 64 AD3d at 31).
In Shipley, the Court of Appeals analyzed whether the medical examiner violated the Public Health Law or the common-law right of sepulcher by retaining a deceased boy's brain after conducting an autopsy (id. at 648). The Court of Appeals held that the right of sepulcher guards against depriving the next of kin of a decedent's body, not individual organs or tissue samples (id. at 654). In so holding, the Court of Appeals had no occasion to address the "improperly deals with" theory of liability before us.[FN1] Melfi asked us to determine, inter alia, when a right of sepulcher claim accrues for timely notice of claim purposes (see Melfi, 64 AD3d at 38-39). The dissent focuses on a passage in Melfi where we stated that "for a right of sepulcher claim to accrue 1) there must be interference with the next of kin's immediate possession of decedent's body and 2) the interference has caused mental anguish, which is generally presumed" (Melfi, 64 AD3d at 39). However, we made that statement in the context of giving guidance on when a right of sepulcher claim accrues for timely notice of claim purposes (id.). We disagree that Melfi may be read to limit the theories of relief available under a right of sepulcher claim as a matter of law.
As earlier noted, the right of sepulcher safeguards the surviving next of kin's right to find "solace and comfort in the ritual of burial" (Shipley, 25 NY3d at 653; Melfi, 64 AD3d at 32). Burial rituals involve more than simply placing a body in its final resting place. Indeed, one need only consider the Catholic practice of holding a wake or vigil, or the ritual cleansing of a body following death by Jews and Muslims, as examples of the ways in which human tradition has shown respect to the dead in the moments preceding burial itself (see The Archdiocese of Milwaukee, Catholic Funerals: Frequently Asked Questions, available at https://[*3]www.archmil.org/ArchMil/Resources/OFW/CatholicFuneralsFAQs-FullPage.pdf [last accessed May 10, 2021];Rabbi Mark A. Popovsky, Jewish Ritual, Reality and Response at the End of Life: A Guide to Caring for Jewish Patients and Their Families, available at https://divinity.duke.edu/sites/divinity.duke.edu/files/documents/tmc/Jewish-Ritual.pdf [last accessedMay 10, 2021]; A R Gatrad, Muslim customs surrounding death, bereavement, postmortem examinations, and organ transplants, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2542725/pdf/bmj00454-0035.pdf [last accessed May 10, 2021]). That plaintiff ultimately took custody of the decedent's body in a timely fashion does not assuage the harm caused by defendant's having allegedly improperly dealt with it.
All concur except Kern, J. who dissents in part
in a memorandum as follows:




KERN, J. (dissenting in part)
 

I would modify the Supreme Court's order to the extent of granting defendant's motion for summary judgment dismissing the right of sepulcher claim on the ground that plaintiff cannot establish such claim as a matter of law, and otherwise affirm.
"The common-law right of sepulcher affords the deceased's next of kin an 'absolute right to the immediate possession of a decedent's body for preservation and burial . . ., and damages may be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body'" (Shipley v City of New York, 25 NY3d 645, 653 [2015][citations omitted]). In Shipley, the Court of Appeals limited a right of sepulcher claim only to situations where there is interference with the plaintiff's immediate possession of the decedent's body for preservation and burial. The Court dismissed the plaintiffs' right of sepulcher claim, despite the fact that, prior to returning the decedent's body to the plaintiffs, the medical examiner withheld a portion of the decedent's brain and tissue for further inspection following an authorized autopsy. In holding that the actions of the medical examiner did not interfere with plaintiffs' immediate possession of the decedent's body, the Court stated:
"Decedent's body was returned to the Shipleys once the authorized autopsy had been conducted. The body was thus made available to the Shipleys for preservation and burial. Because the right of sepulcher is premised on the next of kin's right to possess the body for preservation and burial (or other proper disposition), and is geared toward affording the next of kin solace and comfort in the ritual of burying or otherwise properly disposing of the body, it is the act of depriving the next of kin of the body . . . that constitutes a violation of the right of sepulcher" (Shipley, 25 NY3d at 653-654 [emphasis in original]).
This Court has also held that "for a right of sepulcher claim to accrue . . . there must be interference with the next of kin's immediate possession of decedent's
body . . . . " (Melfi v Mount Sinai [*4]Hosp., 64 AD3d 26, 39 [1st Dept 2009]). "Interference can arise either by unauthorized autopsy or by disposing of the remains inadvertently or, . . . by failure to notify next of kin of the death" (id. [internal citations omitted]). Although improper handling of a decedent's body may be found to constitute a violation of the right to sepulcher, such cases have been limited to instances where there has been actual interference with the plaintiff's immediate possession of the decedent's body, such as improper or unauthorized embalming, unauthorized autopsy or exhumation (see Shipley, 25 NY3d at 653-54; Massaro v Charles J. O'Shea Funeral Home, Inc., 292 AD2d 349, 350-51 [2d Dept 2002]), none of which has been alleged in this case.
Defendant's motion for summary judgment dismissing the right of sepulcher claim should be granted because, even assuming all of plaintiff's allegations are true, defendant established that it did not interfere with plaintiff's immediate possession of decedent's body. The undisputed evidence demonstrates that plaintiff was immediately informed of the decedent's death, that plaintiff was given access to the decedent's body upon his arrival at defendant's facility a mere five hours after decedent died and that defendant promptly contacted the medical examiner to retrieve decedent's body after an autopsy was requested. The testimony submitted by plaintiff describing the presentation of decedent's unkempt body in what appeared to be a storage closet, while disturbing, fails to raise an issue as to whether defendant interfered with plaintiff's immediate possession of the decedent's body for preservation and burial.
Based on the foregoing, I find that because plaintiff has failed to allege any
interference with his ability to bury the decedent's body or dispose of the body in accordance with his wishes, the right of sepulcher claim should be dismissed.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 3, 2021



Footnotes

Footnote 1: This is also demonstrated by footnote four of the Court of Appeals' opinion (see Shipley, 25 NY3d at 651 n 4). There, the Court of Appeals explained that the plaintiffs originally pled that the defendant City of New York was also liable to them for mishandling and improperly displaying the boy's brain (id.; see also Shipley v City of New York, 80 AD3d 171, 179 [2d Dept 2010]). That theory was dismissed by the trial court, and the Second Department affirmed that dismissal (id.; Shipley, 80 AD3d at 179). Since the City was the only appealing party before the Court of Appeals, the Court of Appeals could not possibly have addressed the plaintiffs' dismissed "improperly deals with" theory.